

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00435-CV

———————————————————

DANIEL VILLANUEVA, Appellant

V.

RNA FINANCIAL LLC, Appellee

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-325638-21

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

In this real-estate dispute, Appellee RNA Financial LLC sued Appellant Daniel Villanueva for trespass and trespass to try title. After Villanueva counterclaimed for violations under the Texas Property Code, the trial court granted summary judgment to RNA Financial on Villanueva's counterclaims, and RNA Financial nonsuited its claims against Villanueva. In two issues on appeal, Villanueva argues that the trial court erred by granting summary judgment to RNA Financial on two of his counterclaims—purported violations of Texas Property Code Sections 5.076 and 5.077—because those sections impose continuing obligations that are not subject to the statute of limitations. *See* Tex. Prop. Code Ann. §§ 5.076, .077. But RNA Financial did not move for summary judgment on Sections 5.076 and 5.077 solely based on limitations; RNA Financial also sought summary judgment as to those sections on the ground that it was not bound by those sections because it was not a "seller" of any real estate to Villanueva. Because RNA Financial raised an additional ground for summary judgment—a ground that Villanueva has not challenged on appeal—we can affirm the trial court's judgment on that ground. Furthermore, even after considering the merits of the unchallenged ground, we conclude that the trial court did not err by granting summary judgment because RNA Financial was not the "seller" of the property. *See id.* §§ 5.076, .077.

## II. BACKGROUND

### A. Factual Background

On or about June 1, 2011, Villanueva purported to purchase the real property located at 5524 Humbert Avenue in Fort Worth (the Property) from Jamie and Lucy Sosa pursuant to a "Conditional Sale Agreement" (the Agreement). Under the Agreement, the Sosas agreed to sell Villanueva the Property for $68,000, with payments of $600 being made in 240 installments over twenty years. The Agreement provided that "Seller shall retain title to goods[1] until payment of the full purchase price." It further provided that "[t]he full balance shall become due on default" and that "[u]pon default, Seller shall have the right to retake the goods." According to RNA Financial, Villanueva defaulted on the Agreement because he "never made [the] payments" contemplated by the Agreement. In its reply to the summary judgment response, RNA Financial contended that "Villanueva will have enjoyed 5524 Humbert Avenue coming up on 4 years without paying tax, rent, insurance[,] and fines by the City of Fort Worth."

On January 30, 2020, Lucy Sosa sold the Property to RNA Financial, and a general warranty deed was filed the same day in the Tarrant County deed records.[2]

---

[1]The Agreement listed the following "goods" as part of the contract: "5524 HUMBERT AVE. FORT WORTH, TX 76107."

[2]The deed lists the "Grantor" as "LUCY SOSA aka MARIA LUSY SOSA aka MARIA DE LA LUZ SOSA." It is unclear from the record why Jaime Sosa was not also listed as a "Grantor" in the deed.

On January 31, 2020, RNA Financial sent Villanueva a notice to vacate the Property, citing an alleged "nonpayment of rent." RNA Financial demanded that Villanueva vacate the Property by February 5, 2020.

## B. Procedural Background

On June 3, 2021, RNA Financial filed a lawsuit against Villanueva alleging claims of trespass and trespass to try title. RNA Financial also sought a declaration from the trial court that it was the rightful owner of the Property. RNA Financial later filed a motion for summary judgment on its affirmative claims. The trial court denied RNA Financial's motion. On September 30, 2021, Villanueva filed an amended answer asserting counterclaims under the Texas Property Code. Specifically, Villanueva alleged that RNA Financial violated Sections 5.069(a), 5.070(a), 5.071, 5.072, 5.074, 5.076, and 5.077, and that the violations of Sections 5.069, 5.070, and 5.072 amounted to violations of the Texas Deceptive Trade Practices Act. *See* Tex. Prop. Code Ann. §§ 5.069(a), .070(a), .071, .072, .074, .076, .077; Tex. Bus. & Com. Code Ann. § 17.46.

Thereafter, RNA Financial filed another motion for summary judgment, this time seeking to dismiss Villanueva's counterclaims. In its motion, RNA Financial argued that all of Villanueva's counterclaims failed as a matter of law because "[e]very one of the statutes [Villanueva] references in his counterclaims impose an obligation on the 'seller' of a piece of property under a contract for deed" and that the Sosas, rather than RNA Financial, were the "seller" under the Agreement. RNA Financial

4

also raised the statute of limitations, asserting that "the statute of limitations is two years for a Texas Deceptive Trade Practices claim" and that "the events that allegedly violated the Texas Property Code and the Texas Deceptive Trade Practices Act occurred in 2011" but that Villanueva did not bring his counterclaims until 2022.[3]

Following a hearing, the trial court granted RNA Financial's second motion for summary judgment and entered a judgment dismissing Villanueva's counterclaims. RNA Financial later nonsuited its affirmative claims, and this appeal followed.

## III. DISCUSSION

In two issues, Villanueva argues that the trial court erred by granting RNA Financial's second motion for summary judgment as to the purported violations of Sections 5.076 and 5.077 because those sections impose continuing obligations that are not subject to the statute of limitations.[4] However, as set out above, RNA Financial raised another ground for summary judgment with respect to those sections—that those sections do not apply to it because it was not the "seller" under the Agreement—and the trial court's judgment does not specify the grounds upon which it relied in granting the motion.

---

[3]Contrary to the assertion that Villanueva first brought his counterclaims in 2022, Villanueva filed his counterclaims in 2021. Regardless, RNA Financial asserted that Villanueva's counterclaims were time barred.

[4]Villanueva does not raise any complaint with respect to any of his other counterclaims—his complaint on appeal is limited to the purported violations of Sections 5.076 and 5.077.

## A. Applicable Law

When a trial court's order granting summary judgment does not specify the grounds on which the order is based, the appealing party must negate each ground upon which the judgment could have been based. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022). A party may negate each ground by raising separate issues or asserting a general issue that the trial court erred by granting summary judgment and, within that issue, providing an argument negating all possible grounds upon which summary judgment could have been granted. *Id.* at 227. An appellate court "must affirm a summary judgment if any ground on which the judgment could have been based stands unchallenged—'regardless of the merits of the unchallenged ground[s].'" *Madhu Lodging Partners, LP v. AmGuard Ins. Co.*, No. 02-23-00379-CV, 2024 WL 2760482, at *2 (Tex. App.—Fort Worth May 30, 2024, no pet. h.) (mem. op.) (quoting *McCurley v. Tex. Motor Speedway, Inc.*, No. 02-19-00108-CV, 2019 WL 6606103, at *1 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.)).

## B. Analysis

Villanueva's two issues relate to the statute-of-limitations ground raised in RNA Financial's second motion for summary judgment. But neither of those issues addresses RNA Financial's other ground for summary judgment—that Sections 5.076 and 5.077 do not apply to it because it was not a "seller" under the Agreement. Because the trial court did not specify a basis for its summary-judgment ruling, it could have relied upon the unchallenged ground in granting summary judgment. *See*

*id.* Thus, because Villanueva did not challenge every ground on which the summary judgment could have been based, we are procedurally required to affirm the trial court's summary-judgment ruling without regard to the merits of Villanueva's counterclaims. *See id.* (affirming summary judgment because "the trial court could have granted summary judgment on [the appellant's] contract claim by relying on one or both of [the appellee's] two unchallenged no-evidence grounds"); *McCurley*, 2019 WL 6606103, at *2 (affirming summary judgment because the appellants did not challenge all of the summary-judgment grounds raised by the appellee); *Rollins v. Denton Cnty.*, No. 02-14-00312-CV, 2015 WL 7817357, at *2 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op.) ("Because [the appellant's] sole issue challenges only the denial of his motion for summary judgment . . . without addressing the immunity ground asserted in [the appellees'] cross-motion for summary judgment, we are procedurally constrained to affirm the trial court's summary judgment without regard to the merits of [the appellees'] immunity claim.").

Even if we were to consider the merits of the unchallenged ground, we would conclude that the trial court did not err by granting summary judgment as to the purported violations of Sections 5.076 and 5.077. Both of those sections place certain obligations on the "seller" of real estate conveyed by an executory contract.[5]

---

[5]"Unlike a traditional mortgage, an executory contract 'allows the seller to retain title to the property until the purchaser has paid for the property in full.'" *Smith v. Davis*, 462 S.W.3d 604, 609 (Tex. App.—Tyler 2015, pet. denied) (op. on reh'g) (quoting *Flores v. Millennium Ints., Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005)).

Section 5.076(a) provides that "the seller shall record the executory contract, including the attached disclosure statement required by Section 5.069, as prescribed by Title 3 on or before the 30th day after the date the contract is executed." Tex. Prop. Code Ann. § 5.076(a). A "seller" who violates Section 5.076 is liable to the "purchaser," except that the damages may not exceed $500 for each calendar year of noncompliance. *Id.* § 5.076(e). Section 5.077(a) provides that "[t]he seller shall provide the purchaser with an annual statement in January of each year for the term of the executory contract." *Id.* § 5.077(a). The failure of a "seller" to provide such an annual statement may result in a liquidated damages award in favor of the "purchaser." *Id.* § 5.077(c), (d).

Notably, neither Section 5.076 nor Section 5.077 defines the term "seller." *See id.* §§ 5.076, .077. When we interpret a statute, we must look to the plain language, construing the text in light of the statute as a whole. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). A statute's plain language is the most reliable guide to statutory intent. *Id.* The statutory terms bear their common, ordinary meaning, unless the text of the statute provides a different meaning or the common meaning leads to an absurd result. *Id.* We may not impose our own judicial meaning on a statute by adding words not contained in the statute's language. *Id.* If the statute's plain language is unambiguous, we interpret its plain meaning, presuming that the Legislature intended for each word in the statute to have a purpose and that the Legislature purposefully omitted words not included in the statute. *Id.*; *see* Tex. Gov't

8

Code Ann. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). The ordinary meaning of the term "seller" is "[s]omeone who sells or contracts to sell goods; a vendor" or "a person who sells or agrees to sell anything; the transferor of property in a contract of sale."[6] *Seller*, Black's Law Dictionary (12th ed. 2024).

In its second motion for summary judgment, RNA Financial argued that Sections 5.076 and 5.077 did not apply to it because it was not the "seller" under the Agreement. RNA Financial attached to its motion the Agreement, which specifically listed the Sosas as the "Seller." RNA Financial also attached to its motion the deed between itself and Lucy Sosa, which provided that RNA Financial was the "Grantee"—i.e., the purchaser—of the Property. Finally, RNA Financial also attached to its motion the affidavit of Richard Abrams, a manager of RNA Financial, who averred that RNA Financial was not an assignee of the Agreement. Viewing that evidence under the applicable standard of review,[7] we hold that RNA Financial's

---

[6]Section 5.079(d)—a section within the same subchapter as Sections 5.076 and 5.077—provides, "In this section, 'seller' includes a successor, assignee, personal representative, executor, or administrator of the seller." Tex. Prop. Code Ann. § 5.079(d).

[7]We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex.

9

summary-judgment evidence conclusively established that it was not a "seller" of the Property such that it would be bound by the obligations of Sections 5.076 and 5.077. *See* Tex. Prop. Code Ann. §§ 5.076, .077. We thus overrule Villanueva's two issues.

## IV. CONCLUSION

Having overruled Villanueva's two issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: July 11, 2024

---

2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).